UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


KEEPER OF THE MOUNTAINS FOUNDATION,

      Plaintiff,

v.                                        Civil Action No. 2:06-0098

UNITED STATES DEPARTMENT OF JUSTICE,

      Defendant.


<u>MEMORANDUM OPINION AND ORDER</u>


      Pending is a motion for summary judgment, filed by the defendant on January 10, 2007.[1]


I.


      On September 16, 2005, the Mississippi newspaper <u>The Clarion-Ledger</u> printed an article indicating that an internal e-mail had been circulated from the U.S. Department of Justice ("DOJ") to various United States Attorneys' Offices.  (Newspaper Article, attached as Ex. B to Compl.).  The e-mail was sent

---

      [1]   Plaintiff's only exhibit attached to its response is duplicative of an exhibit attached by the defendant.  Indeed, plaintiff acknowledges that it "accepts as substantially accurate, for purposes of this motion, the procedural chronology of the case offered in the Declarations of John F. Boseker and Melanie Ann Pustay submitted with the DOJ motion for summary judgment."  (Resp. at 1).

sometime between September 13 and September 15, 2005, and posed the following question:

> Has your district defended any cases on behalf of the (U.S.) Army Corps of Engineers against any claims brought by environmental groups seeking to block or otherwise impede the Corps work on the levees protecting New Orleans?  If so, please describe the case and the outcome of the litigation.

(Compl. ¶ 2).  The newspaper article surmised that "[f]ederal officials appear to be seeking proof to blame the flood of New Orleans on environmental groups, documents show."  (Newspaper Article, attached as Ex. B to Compl.).

Among the documents released in response to the Freedom of Information Act ("FOIA") request that is the subject of this litigation was an e-mail sent on September 13, 2005 from James Clingler of the DOJ Office of Legislative Affairs to various employees of the DOJ.  The e-mail states as follows:

> I received a call this afternoon from Katherine English, a counsel at the Senate Environment and Public Works Committee.  In connection with a series of Katrina-related oversight hearings that Chairman Inhofe is planning, Katherine asked us to provide the Committee with a list of any cases in which the Department has defended the Army Corps of Engineers against claims brought by environmental groups seeking to "block or otherwise impede" the Corps' work on the levees protecting New Orleans.  The timing is urgent, according to Katherine.  Let me know if you need any more informatino [sic] from me in order to process this request.  Thanks.

(OIP Doc. Production at OLA 3, OLA 10, OLA 11, attached as Ex. 1

to Resp.).  Plaintiffs concur with the theory expressed in The
Clarion Ledger article that the DOJ was attempting to shift blame
for the disaster that occurred in the aftermath of Hurricane
Katrina onto environmentalists.  (Compl. ¶ 4).

On October 4, 2005, counsel on behalf of the plaintiff
submitted the FOIA request to the DOJ.  (Memo. in Supp. of M.S.J.
at 2; 10-04-05 DePaulo Ltr. to DOJ, attached as Ex. A to Boseker
Decl.).  The request referenced the internal DOJ e-mail to all
U.S. Attorneys' Offices and sought information based on the
following seven items:

(1)  Copies of all emails in substantially the form [as
     the e-mail referenced in the newspaper article] .
     . . that were in fact sent to any person;

(2)  Copies of all replies to the referenced emails;

(3)  Copies of all documents pertaining to the
     September 16, 2005 article in The Clarion Ledger;

(4)  Copies of all documents addressed to, prepared by,
     or copied to Cynthia Magnuson of the Department of
     Justice pertaining to the referenced email or the
     September 16, 2005 article in The Clarion Ledger;

(5)  Copies of any documents pertaining to any inquiry
     into the source of the leak of the referenced
     email to The Clarion Ledger;

(6)  Copies of any documents recording a communication
     from the United States Congress or any other
     source outside the Department of Justice
     pertaining to the referenced email or requesting
     that the inquiry incorporated into the email be
     sent; [and]

(7)  Copies of any documents in any other way
         pertaining to the referenced email or the
         September 16, 2005 article in <u>The Clarion Ledger</u>.

(<u>Id.</u>).  The DOJ referred the FOIA request to its two offices most
likely to have the relevant information: the Executive Office of
the U.S. Attorneys ("EOUSA") and the Office of Information and
Privacy ("OIP").  (Memo. in Supp. of M.S.J. at 1).  Each filed a
<u>Vaughn</u> Index.[2]

A.      EOUSA's <u>Vaughn</u> Index

On February 8, 2006, the EOUSA provided plaintiff with
approximately 175 pages of documents without excision.  (Boseker
Decl. ¶ 8, attached as Ex. 1 to Mot. for S.J.).  On June 26,
2006, in accordance with Magistrate Judge Mary E. Stanley's order
of June 14, 2006, the DOJ filed the EOUSA <u>Vaughn</u> index describing
six documents consisting of ten pages that were withheld in full
and excluded from the February 8, 2006, production by the EOUSA.
(06-26-06 <u>Vaughn</u> Index).  Upon further evaluation of these six

---

[2]      A <u>Vaughn</u> index, the name of which is derived from the
case of <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1974), is a list
"which describes each document withheld by an agency with
sufficiently detailed information to enable a district court to
rule whether it falls within an exemption provided by FOIA."
<u>Ethyl Corp. v. EPA</u>, 25 F.3d 1241, 1244, n. 1 (4th Cir. 1994).

documents, the EOUSA released two one-page e-mails (listed as documents 2 and 6 in the <u>Vaughn</u> index) in largely unredacted form[3] to the plaintiff.  (Boseker Decl. ¶ 28, attached as Ex. 1 to Mot. for S.J.; Memo. in Supp. of M.S.J. at 5).  The following withheld items described in the EOUSA's <u>Vaughn</u> index remain in controversy: a two-page tally of the various U.S. Attorneys' Offices entitled "Alternative Dispute Resolution Survey of EOUSA Cases" (document 1), one redacted conclusional sentence from an otherwise disclosed one-page e-mail from October 17, 2005 (part of document 2), a three-page e-mail exchange from September 15, 2005 (document 3), a two page e-mail exchange from October 14, 2005 (document 4), and a one page e-mail exchange from September 14, 2005 (document 5).  (<u>Id.</u>; 06-26-06 <u>Vaughn</u> Index).

According to a sworn declaration from the DOJ,

[Document 1, the] "Alternative Dispute [sic] Survey of EOUSA Cases," [is a] printed form (2 pages), appearing to have been employed by EOUSA personnel to tally and record by hand the numerous responses to USAO searches

---

[3] In document 2, one sentence containing a recommendation and soliciting a response was redacted pursuant to FOIA exemption 5 along with a personal phone number which was redacted pursuant to exemption 2.  (Boseker Decl. ¶ 28 at Doc. 2, attached as Ex. 1 to Mot. for S.J.).  Plaintiff's response implies it is not contesting the redaction of personal phone numbers and indeed may not even be contesting the sentence containing the recommendation.  (Resp. at 2, 11).  In exercising caution, the court will still consider the redacted sentence containing the recommendation to be in controversy.

> for records responsive to inquiry regarding levees and
> environmental injunction.  Contains names of USAOs,
> contacts responding, and whether or not anything was
> located as result of search therein.  (All recorded
> responses on this document are "No.").

(Boseker Decl. ¶ 28 at Doc. 1, attached as Ex. 1 to Mot. for

S.J.).  The EOUSA's <u>Vaughn</u> index indicates that the undated,

unsigned, and preprinted tally contains notes compiled by the

EOUSA staff.  (06-26-06 <u>Vaughn</u> index).

     With respect to the e-mails, the EOUSA's <u>Vaughn</u> index

lists the date the item was originally sent, the sender by name

and recipients by name, the number of pages of the e-mail

exchange, and the text in the subject line.  (<u>Id.</u>).  The index

then explains the general subject matter of the message.  (<u>Id.</u>).

For example, one of the descriptions states this much about the

contents of the message:

> This e-mail contains internal Department of Justice
> communications between EOUSA and other DOJ components
> regarding the Katrina-related survey, and it contains
> intra-agency deliberations regarding possible courses
> of action in response to a forwarded press inquiry
> concerning the Katrina-related survey at issue.

(<u>Id.</u>).  The other e-mail descriptions in the EOUSA's <u>Vaughn</u> index

are similar to this example inasmuch as they describe e-mail

conversations in which "possible courses of action" were

discussed in the context of either a response to the press

inquiry about the survey immediately prior to publication of the

article (document 3) or a response to the congressional inquiry relating to the newspaper article (documents 4 and 5).  (<u>Id.</u>). For each e-mail exchange, the index clarifies which exemption is being invoked and why and explains whether the document was fully or partially withheld.  (<u>Id.</u>).

The defendant claims the two-page survey is exempt from disclosure under 5 U.S.C. § 552(b)(2) ("exemption 2" relating to internal practices of an agency), and the e-mail exchanges are properly excluded under 5 U.S.C. § 552(b)(5) ("exemption 5" relating to inter or intra-agency memos not available by law to a nonagency party).[4]  (<u>Id.</u>).

B.       OIP's <u>Vaughn</u> Index

On August 28, 2006, OIP provided counsel for plaintiff

---

[4]       The EOUSA's <u>Vaughn</u> index includes § 552(b)(2) in addition to § 552(b)(5) as a permissible exemption for withholding the e-mails.  (06-26-06 <u>Vaughn</u> index).  As to the e-mails, however, the agency employee's subsequent declaration declined to assert the § 552(b)(2) exemption, and counsel for the DOJ likewise does not argue that § 552(b)(2) is applicable in that context.  (Boseker Decl. ¶ 23, attached as Ex. 1 to Mot. for S.J.; Memo. in Supp. of M.S.J. at 10).  Thus, the court need not consider the 552(b)(2) exemption with respect to the e-mails.

7

with eighteen pages of documents.[5]  (OIP Doc. Production,
attached as Ex. 1 to Resp. to M.S.J.).  Two of those pages
consisted of a letter from Congressman John Conyers, Jr. to
Attorney General Alberto Gonzales and were unredacted.  (Id.; 09-
16-05 Congressman Conyers letter to Attorney General Gonzales,
attached as Ex. A to Resp.).  The remaining sixteen pages
consisted of several e-mails per page, many of which were
redacted in full.  (OIP Doc. Production, attached as Ex. 1 to
Resp. to M.S.J.).

        In its document production, the OIP, unlike the EOUSA,
coded each individual message in the sixteen pages of e-mails as
follows: PAO 1 through PAO 26 and OLA 1 through OLA 30.[6]  (Id.).

---

[5]     A two-page document referred by the EOUSA to the OIP was
apparently duplicative of another document that had already
been disclosed.  (Pustay Decl. ¶ 6; 08-28-06 Pustay Ltr. to
DePaulo, attached as Ex. 2-C to Resp.).  Another nine documents
consisting of ten pages referred to the OIP by the EOUSA were
unresponsive to plaintiff's request.  (Id.).  The nine
unresponsive documents are sufficiently described in the
declaration accompanying the EOUSA's Vaughn index and in the
defendant's memorandum.  (Pustay Decl. at 4, n. 2, attached as
Ex. 2 to Mot. for S.J.; Memo. in Supp. of M.S.J. at 4, n. 1).  In
its response, plaintiff did not object to their omission from the
Vaughn index or their failure to be disclosed.

[6]     "PAO" is an acronym for the Office of Public Affairs of
the DOJ, and "OLA" is an abbreviation for the Office of
Legislative Affairs of the DOJ.  (09-01-06 Vaughn Index, attached
as Ex. 2-B to Mot. for S.J. at 4).  The OIP conducted records
searches for both the PAO and OLA.  (Pustay Decl. ¶ 5, attached
as Ex. 2-A to Mot. for S.J.).

PAO 1, 3, 14, 15, 18, 21, 22, 23, 25, 26, and OLA 1, 3, 4, 5, 6, 10, 11, 18, and 27 were all disclosed in full in the production on August 28, 2006.  (Id.).

OLA 2 was referred to the Civil Division of the DOJ,[7] OLA 12 was referred to the Environmental and Natural Resources Division ("ENRD") of the DOJ, and PAO 16/19, 17/20,[8] and 24 were referred to the EOUSA before all of these referred e-mails were later disclosed in full to the plaintiff.  (09-01-06 Vaughn index, attached as Ex. 2-B to Mot. for S.J.; Putsay Decl. ¶ 5, attached as Ex. 2-A to Mot. for S.J.; 09-01-06 Jt. Status Rpt. at 2; Boseker Decl. ¶¶ 15-16, attached as Ex. 2 to Mot. for S.J.; Memo. in Supp. of M.S.J. at 3-4).

OIP justified the redactions of PAO 5, 9, 11, 12 and OLA 9, 14, 15, and 21 by indicating in its document production that these e-mails were "processed by EOUSA."  (Id.; 08-28-06

---

[7]     Based on its response, it appears plaintiff may not have been able to read the barely legible notations on OIP's redacted portions of its document production, which explained how some of the documents were duplicative of others such that separate entries in the OIP Vaughn index were unnecessary.  The court notes that it would have been preferable for OIP to explain the status of each document in the Vaughn index in addition to the notes in the margins in the document production.

[8]     PAO 16 and 19 are the same version of an individual e-mail message as are PAO 17 and 20.  (OIP Doc. Production, attached as Ex. 1 to Resp.).

9

Pustay Ltr. to DePaulo, attached as Ex. 2-C to Mot. for S.J.).

It is unclear what is meant by the term "processed."  (Id.).

Presumably, these e-mails were described in the EOUSA's Vaughn

index, although OIP does not say so explicitly.  Both the OIP's

Vaughn index and the Pustay declaration fail to clearly

articulate why these e-mails may be redacted and excluded from

the OIP's Vaughn index.

　　　　None of the e-mails in the sixteen pages provided by

OIP were designated PAO 4 or OLA 17, 22, 23, 24, 25, or 26.  The

e-mail messages skip from PAO 3 to PAO 5, from OLA 16 to OLA 18,

and then again from OLA 21 to OLA 27, and in each case, the page

ends with the former number and the next page begins with the

latter number.  Unlike when the document production skips over

OLA 7 and 8, however, there is no entry in the OIP's Vaughn index

for any documents designated PAO 4 or OLA 17, 22, 23, 24, 25 or

26 as there is for OLA 7 and 8.  Nowhere in the record does

plaintiff explain why the designations for each e-mail would not

be in strict numerical order.  The court is unaware whether these

documents exist.

　　　　On September 1, 2006, OIP sent plaintiff a Vaughn index

relating to the production on August 28, 2006.  (Memo. in Supp.

of M.S.J. at 4).  PAO 2 was disclosed, but for a redacted

personal cell phone number excluded pursuant to exemption 6, and
plaintiff does not object to its redaction.  (Resp. at 2).
Because the redaction in this e-mail message involved only the
cell phone number and is uncontested, the number of OIP e-mail
messages listed in the <u>Vaughn</u> index that are at issue is six
rather than seven.  The index lists six of the released but
redacted e-mail messages, identified as PAO 6, 7, 8, 10, 13 and
OLA 13, as well as two unsigned draft letters from an Assistant
Attorney General to Congressman Conyers, withheld in full and
identified as OLA 7 and 8.  (09-01-06 OIP <u>Vaughn</u> index, attached
as Ex. 2-B to Mot. for S.J.).  OLA 16, 19, 20, 28, 29, and 30 are
duplicative of the e-mails listed in the <u>Vaughn</u> index.  (08-28-06
OIP Doc. Production, attached as Ex. 1 to Resp.).

        All of the contested documents listed in the OIP's
index, the redacted portions of the six e-mail messages
designated as PAO 6, 7, 8, 10, 13 and OLA 13 and the two withheld
draft letters identified as OLA 7 and 8, are alleged to be exempt
under § 552(b)(5) only.  (<u>Id.</u>).

        The OIP's <u>Vaughn</u> index describes the six withheld e-
mails much like the EOUSA's <u>Vaughn</u> index.  (09-01-06 <u>Vaughn</u>
index, attached as Ex. 2-B to Mot. for S.J.).  The OIP's version
lists the date and explains the general content of the message.

11

(<u>Id.</u>).  The OIP identifies the department of the sender and
recipients.  (<u>Id.</u>).  In the briefing, the DOJ uses the example of
the document identified as PAO 13 to describe the sufficiency of
the index with respect to the e-mails.  (Reply at 10-11).  The
index describes the contents of the message as follows:

> E-mail message from PAO to ENRD personnel regarding a
> press inquiry relating to Hurricane Katrina.  The
> author advises of the press inquiry and solicits
> background information on the topic as well as input on
> a contemplated manner of response to the inquiry.

(09-01-06 <u>Vaughn</u> index, attached as Ex. 2-B to Mot. for S.J.).
All of the e-mail descriptions in the OIP's <u>Vaughn</u> index are
similar to PAO 13.  (<u>Id.</u>).  They all describe e-mail
conversations in which a possible response to the newspaper
inquiry were discussed.  (<u>Id.</u>).  The legend at the end of the
index clarifies any abbreviations used.  (<u>Id.</u>).  Again like the
EOUSA, the OIP's index explains which exemption is being invoked
and whether the document was fully or partially withheld.  (<u>Id.</u>).

        On February 9, 2006, plaintiff brought suit under the
Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for
defendant's refusal to disclose a portion of the records
requested.  This case is properly before the court as it has
subject matter jurisdiction to hear "civil actions arising under
the . . . laws . . . of the United States."  28 U.S.C. § 1331.

Defendant argues summary judgment is appropriate
because all of the information withheld was properly so withheld
pursuant to the enumerated FOIA exemptions in 5 U.S.C. § 552(b).
Plaintiff disputes the adequacy of the Vaughn indices and the
applicability of the exemptions.

II.

The Summary Judgment Standard

A party is entitled to summary judgment "if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  Material facts are those necessary to
establish the elements of a party's cause of action.  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing
the record and all reasonable inferences drawn therefrom in a
light most favorable to the non-moving party, a reasonable fact-
finder could return a verdict for the non-movant.  Id.  The

13

moving party has the burden of showing -- "that is, pointing out
to the district court -- that there is an absence of evidence to
support the nonmoving party's case."  Celotex Corp. v. Catrett,
477 U.S. 317, 325 (1986).  If the movant satisfies this burden,
then the non-movant must set forth specific facts as would be
admissible in evidence that demonstrate the existence of a
genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); Id. at
322-23.  A party is entitled to summary judgment if the record as
a whole could not lead a rational trier of fact to find in favor
of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th
Cir. 1991).

          Conversely, summary judgment is inappropriate if the
evidence is sufficient for a reasonable fact-finder to return a
verdict in favor of the non-moving party.  Anderson, 477 U.S. at
248.  Even if there is no dispute as to the evidentiary facts,
summary judgment is also not appropriate where the ultimate
factual conclusions to be drawn are in dispute.  Overstreet v.
Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

          A court must neither resolve disputed facts nor weigh
the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th
Cir. 1995), nor make determinations of credibility.  Sosebee v.
Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party

14

opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

III.

A.      FOIA

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  <u>NLRB v. Robbins Tire & Rubber Co.</u>, 437 U.S. 214, 242 (1978).  FOIA thus begins with the proposition that agencies shall make information available to the public.  5 U.S.C. § 552(a)(3)(A); <u>Hanson v. U.S. Agency for Int'l Dev.</u>, 372 F.3d 286, 290 (4th Cir. 2004).

"While an efficient and effective democratic government is one that is open to the people and accountable to them, the people's access must be orderly and not so unconstrained as to disrupt the government's daily business."  <u>Ethyl Corp. v. EPA</u>, 25

F.3d 1241, 1245 (4th Cir. 1994).  Consequently, there are nine discrete exemptions, which allow an agency to withhold certain categories of information sought by a request from the general public.  5 U.S.C. § 552(b); Hanson, 372 F.3d at 290.  "In general, FOIA exemptions should be narrowly construed to favor disclosure."  Hanson, 372 F.3d at 290 (citing Bowers v. U.S. Dep't of Justice, 930 F.2d 350, 354 (4th Cir. 1991)); see also Ethyl Corp., 25 F.3d at 1245; Virginia Beach v. U.S. Dep't of Commerce, 995 F.2d 1247, 1252 (4th Cir. 1993).  In a judicial review of the agency's response, the agency has the burden of justifying nondisclosure, and the court reviews the agency's action de novo.  Id.; 5 U.S.C. § 552(a)(4)(B).  The government satisfies this burden "by describing the withheld materials with reasonable specificity and explaining how it falls under one of the enumerated exceptions.  As a general rule, these and all other FOIA determinations should be resolved on summary judgment."  Hanson, 372 F.3d at 290 (internal citation omitted).

The relevant FOIA exemptions provide as follows:

(b) This section does not apply to matters that are--

. . .

(2) related solely to the internal personnel rules and practices of an agency;

. . .

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a

16

party other than an agency in litigation with the
agency;

. . .

Any reasonably segregable portion of a record shall be
provided to any person requesting such record after
deletion of the portions which are exempt under this
subsection. The amount of information deleted shall be
indicated on the released portion of the record, unless
including that indication would harm an interest
protected by the exemption in this subsection under
which the deletion is made. If technically feasible,
the amount of the information deleted shall be
indicated at the place in the record where such
deletion is made.

5 U.S.C. § 552(b).

B.      Analysis

    1.   Inadequacy of OIP's Vaughn Index

        As described previously, curiously absent from both
OIP's document production, OIP's Vaughn index, and the
accompanying Pustay declaration, are any mention of PAO 4 and OLA
17, 22, 23, 24, 25 and 26.  (09-01-06 Vaughn index, attached as
Ex. 2-B to Mot. for S.J.; OIP Doc. Production, attached as Ex. 1
to Resp.).  To the extent the documents exist and are not
described in the Vaughn index and are otherwise without further
explanation, the court has no basis to consider whether they were
properly withheld.

17

Furthermore, it is unclear the reasons for redacting and omitting from the Vaughn index the e-mails designated PAO 5, 9, 11, 12 and OLA 9, 14, 15, and 21, which are identified in the OIP's document production as being "processed by the EOUSA." (08-28-06 OIP Doc. Production, attached as Ex. 1 to Resp.).

The index must "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." King v. U.S. Dep't of Justice, 830 F.2d 210, 218 (D.C. Cir. 1987). The court must "be able to derive from the [Vaughn] index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." Jones v. FBI, 41 F.3d 238, 242 (6th Cir. 1994). No such explanation is presented that would afford a meaningful opportunity for review of PAO 4 and OLA 17, 22, 23, 24, 25 and 26, if such documents do exist, or of the e-mails processed by the EOUSA, identified as PAO 5, 9, 11, 12 and OLA 9, 14, 15, and 21. The OIP's Vaughn index and accompanying Pustay declaration are clearly inadequate in this regard.

The DOJ replies to the plaintiff's charge that the OIP's index is unclear by stating that the plaintiff misunderstands the DOJ's system because it numbers each individual message within an e-mail chain. (Reply at 10). The DOJ reply does not elaborate further. (Id.). This reply does

18

not explain the absence of the numerical designations of PAO 4
and OLA 17, 22, 23, 24, 25 and 26 from both the documents
produced and the OIP's Vaughn index or what is meant when the OIP
merely states that PAO 5, 9, 11, 12 and OLA 9, 14, 15, and 21
were "processed by EOUSA."

          The defendant must be afforded an additional
opportunity to explain itself, and if necessary, produce PAO 4
and OLA 17, 22, 23, 24, 25 and 26 and PAO 5, 9, 11, 12 and OLA 9,
14, 15, and 21 or to provide a supplemental Vaughn index
explaining the basis for withholding these e-mails.  In Dellums
v. Powell, 642 F.2d 1351, 1359 (D.C. Cir. 1980), the D.C. Court
of Appeals agreed with the district court that the Vaughn index
was deficient but found the "District Court should have afforded
Mr. Nixon one more opportunity to submit a satisfactory index,
rather than to ignore his objections and order the immediate
release of all of the transcripts to appellee's counsel."  See
also Coastal States Gas Corp. v. Dep't of Energy, 644 F.2d 969,
979-980 (3d Cir. 1981) (citing Dellums, 642 F.2d at 1359).  The
circuit court found the immediate disclosure of documents to be
reversible error in Dellums.  Similarly, in Campaign For
Responsible Transplantation v. U.S. Food & Drug Admin., 219 F.
Supp.2d 106, 111-112, 116-117 (D. D.C. 2002), the district court
confronted a deficient and inadequate Vaughn index and ordered
the FDA to confer with the plaintiff to resolve any remaining

disputes and then, if necessary, to provide a supplemental <u>Vaughn</u> index remedying any deficiencies in the original index.

Plaintiff relies on <u>Knight v. CIA</u>, 872 F.2d 660, 662 (5th Cir. 1989) and <u>Maine v. Dep't of Interior</u>, 298 F.3d 60, 72-73 (1st Cir. 2002) for support that documents not adequately explained in the <u>Vaughn</u> index should be released or reviewed <u>in camera</u>, but neither compels such a result here.  (Resp. at 14). The circuit court in <u>Knight</u> merely mentions the district court's <u>in camera</u> review of withheld CIA documents without criticism. <u>Knight</u>, 872 F.2d at 662.  In <u>Maine</u>, the circuit court acknowledged that the immediate disclosure of documents based on an agency's flawed submissions was "frowned upon" in <u>Coastal States</u>, but it found the district court did not abuse its discretion in ordering the immediate disclosure of some documents based on an inadequate <u>Vaughn</u> index, instead of providing the agency with an opportunity to revise the index.  <u>Maine</u>, 298 F.3d at 72-73.

Though the OIP's <u>Vaughn</u> index is unclear, the court finds it premature, at this time and without a motion from the plaintiff, to compel the defendant to produce PAO 4 and OLA 17, 22, 23, 24, 25 and 26 and PAO 5, 9, 11, 12 and OLA 9, 14, 15, and 21 for an <u>in camera</u> review or to order their immediate release. <u>See</u> <u>Quinon v. FBI</u>, 86 F.3d 1222, 1227-28 (D.C. Cir. 1996) (district court has broad discretion in determining when <u>in</u>

camera review should be conducted).  At this juncture, the court does not even know whether the first set of such documents exist. The second grouping of documents -- those processed by the EOUSA -- may be permissibly withheld under the explanations in the EOUSA's Vaughn index.

Instead, the court adopts the approach undertaken in Campaign For Responsible Transplantation and urges the parties to confer on PAO 4 and OLA 17, 22, 23, 24, 25 and 26 and PAO 5, 9, 11, 12 and OLA 9, 14, 15, and 21.  To the extent they do not agree on whether these e-mails need to be redacted, the court can only evaluate the appropriateness of the redactions based on a supplemental Vaughn index which provides a basis for their exclusion.  Leaving this issue aside for now, the court proceeds to the discussion of those documents that were described in the Vaughn indices.

Essentially, the Vaughn indices list three types of documents withheld by the defendant.  (06-26-06 Vaughn Index; 09-01-06 Vaughn Index, attached as Ex. 2-B to Mot. for S.J.).  They include a tally of the U.S. Attorneys' offices who responded to the post-Katrina e-mail, draft letters to Congressman Conyers, and various e-mails.  (Id.).  Defendant asserts § 552(b)(2) or "exemption 2" for withholding the tally and § 552(b)(5) or "exemption 5" for withholding everything else in issue, consisting of the draft letters and e-mails.  (Id.).

21

2.    Applicability of Exemption 2 to Tally of U.S.
      Attorneys

Exemption 2 protects from disclosure "matters that are
. . . related solely to the internal personnel rules and
practices of an agency." 5 U.S.C. § 552(b)(2).  As a threshold
matter, the information must be "used for predominantly internal
purposes."  Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir.
1992) (quoting Crooker v. Bureau of Alcohol, Tobacco & Firearms,
670 F.2d 1051, 1073 (D.C. Cir. 1981) (en banc)).  A tally of U.S.
Attorneys' Offices in response to a DOJ inquiry is most assuredly
used predominantly for internal purposes, and plaintiff does not
argue otherwise.

Following clearance of this initial "used for
predominantly internal purposes" hurdle, exemption 2 has been
found to exempt two subcategories of information: (1) information
the release of which would risk circumvention of agency
regulations and (2) "routine matters of merely internal
interest."  Schiller, 964 F.2d at 1207 (citing Schwaner v. U.S.
Dep't of Air Force, 898 F.2d 793, 794 (D.C. Cir. 1990)); see also
Founding Church of Scientology v. Smith, 721 F.2d 828, 831, n. 4
(D.C. Cir. 1983).  The first subcategory of the exemption is
known in the D.C. Circuit as "high 2," while the second is known

22

as "low 2."  See e.g. Schiller, 964 F.2d at 1207; Wiesenfelder v. Riley, 959 F. Supp. 532, 535 (D. D.C. 1997).  The DOJ claims this two-page document is exempt under the "low 2" conception of the exemption relating to routine matters of internal interest. (Resp. at 7).

        The case in our circuit to deal with the routine matters of internal interest portion of exemption 2 is Nix v. U.S., 572 F.2d 998, 1005 (4th Cir. 1978).  In Nix, it was explained that "[m]erely how the FBI routes and labels its investigations, to whom its agents send reports of the investigations, and who does the typing of the reports are ordinarily not of such genuine and significant public interest as to require FOIA disclosure by subsection (2)."  572 F.2d at 1005 (citing Maroscia v. Levi, 569 F.2d 1000 (7th Cir. 1977)).  Other courts have likewise found application of the exemption appropriate where plaintiffs sought information about trivial matters.  See e.g. Schiller, 964 F.2d at 1208 (internal time deadlines and procedures, recordkeeping directions, instructions on contacting agency officials for assistance, and guidelines on agency decisionmaking were properly excluded from disclosure); Hale v. U.S. Dep't of Justice, 973 F.2d 894, 896-897, 902 (10th Cir. 1992), vacated by Hale v. U.S. Dep't of Justice, 509 U.S. 918 (1993) ("a checklist form used to assist [FBI] special agents in consensual monitoring; [and] personnel directories containing

the names and addresses of FBI employees" were, after in camera
review, considered trivial and were excluded from disclosure
under both exemptions 2 and 7 when state death row inmate sought
information relating to the simultaneous federal investigation
into the kidnap and murder for which he was convicted in state
court).  The D.C. Circuit has explained that, "if the material
relates to trivial administrative matters of no genuine public
interest, exemption would be automatic under the statute."
Smith, 721 F.2d at 830, n. 4 (internal citation omitted).

        The DOJ does not argue that the request for the tally
is or would be overly burdensome.  In fact, the two-page document
has already been located and reviewed.  (Boseker Decl. at ¶ 28,
attached as Ex. 1 to Mot. for S.J.).  Instead, the DOJ rightly
focuses on the triviality of the tally at issue.  (Reply at 3).
The DOJ contends that,

>    The undated, unsigned draft handwritten tally of USAO
>    responses to the e-mail discussing claims brought by
>    environmental groups falls within the terms of
>    Exemption 2 because it reflects the internal practice
>    of DOJ's informal tracking of responses from various
>    USAO's.  Additionally, the handwritten tally represents
>    precisely the sort of trivial administrative material
>    that courts have determined to lack any genuine public
>    interest.

(Id.).  Plaintiff responds by posing the following question:

>    What more dramatic and definitive rebuttal to the
>    Senator's patent hostility to environmentalists could
>    exist than a hand-written tally of US Attorneys'
>    offices demonstrating in a graphic fashion [what] no
>    public relations team could hope to produce the fact

> that the evidence in support of the Senator's
> hypothesis [that the malfunction of the levees could be
> connected to environmentalists] was absolutely nothing
> . . . .[?]"

(Resp. at 3).

          The purpose of exemption 2 is "simply to relieve agencies of the burden of assembling and maintaining for public inspection matter in which the public could not reasonably be expected to have an interest." Department of the Air Force v. Rose, 425 U.S. 352, 369-70 (1976). In Nix, Schiller, Hale, and Maroscia, the information sought was about mundane internal procedural matters, primarily involving recordkeeping, which may have had implications for their particular cases, but which did not contain any important public information. It goes without saying that the general public cares little about the way agencies label investigations or maintain their personnel directories.

          In contrast to those cases, the tally is substantive evidence of the DOJ's role in assisting Senator Inhofe's research into environmentalists' involvement, if any, in Corps projects relating to New Orleans levees. The DOJ's role in assisting a Senator in assigning blame for a putative government failure on a political constituency is important public information. So, too, are the results reflected in the tally. The tally is, thus, far from trivial. To conclude that the exemption covers the document

at issue would, in this instance, allow the exception to eviscerate the general rule of disclosure set forth in FOIA.

The fact that the DOJ's declaration already disclosed that all of the U.S. Attorneys' Offices answered the question about the involvement of environmentalists negatively does not permit the DOJ to withhold it.  (Boseker Decl. ¶ 28, attached as Ex. 1 to Mot. for S.J.).  For one, the description of the document may be incomplete.  The Vaughn index indicates that the EOUSA made notes on the tally, but there is no description in the declaration of any notes.  (Id.; 06-26-06 Vaughn index).  More importantly, disclosure of contents of the document does not make the document itself trivial.  When an exception is applicable, FOIA allows for the agency to describe the document in a Vaughn index and withhold it so that the court can discern whether it was permissibly withheld.  The overarching purpose and general rule of FOIA is to provide for disclosure of documents, not to describe and withhold.

Consequently, the court finds the defendant's assertion of the exemption misplaced.  The tally has significant public value and is "not related solely to the internal personnel rules and practices of the agency."  See 5 U.S.C. § 552(b)(2).

26

3.    Applicability of Exemption 5 to Various E-mails
      and DOJ Drafts of Letter to Congressman Conyers


        The remainder of the documents described in the <u>Vaughn</u>

indices are being withheld pursuant to exemption 5.

>   Exemption 5 provides that FOIA disclosure rules do not
>   apply to "interagency or intraagency memorandums or
>   letters which would not be available by law to a party
>   other than an agency in litigation with the agency."  5
>   U.S.C. § 552(b)(5).  Courts have interpreted Exemption
>   5 to exclude from disclosure documents produced under
>   the attorney work product doctrine and the deliberative
>   process privilege.  <u>NLRB v. Sears, Roebuck & Co.</u>, 421
>   U.S. 132, 149-50, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).

<u>Hanson</u>, 372 F.3d at 290-291.  Defendant asserts the deliberative

process privilege for withholding the draft letters to

Congressman Conyers, the three fully withheld and one partially

redacted EOUSA e-mail exchanges, and the six OIP e-mail messages.

(Resp. at 2).


        The purpose of the deliberative process privilege is to

encourage frank discussion of issues within the government by

insulating government employees from the chilling effect likely

to occur were the process to be opened up to public scrutiny and

to protect against public confusion resulting from disclosure of

reasons and rationales that were not ultimately the bases for the

agency's action.  <u>Sears, Roebuck & Co.</u>, 421 U.S. at 150; <u>Dep't of

Interior v. Klamath Water Users Protective Ass'n.</u>, 532 U.S. 1, 8-

9 (2001); <u>Ethyl Corp.</u>, 25 F.3d at 1248 (internal citations

27

omitted); <u>Virginia Beach</u>, 995 F.2d at 1252-1253 (internal citations omitted).  The logic behind the privilege is that this open dialogue without fear of reprisal will enhance the quality of the government's decisionmaking, unlike the restrained discussion that would often result if conducted "in a fishbowl." <u>EPA v. Mink</u>, 410 U.S. 73, 87 (1973) (citing S. Rep. No. 813, 89th Cong., 1st Sess. 9 (1965)); <u>Klamath Water Users</u>, 532 U.S. at 8-9; <u>Ethyl Corp.</u>, 25 F.3d at 1252 (internal citations omitted).

In order for the deliberative process privilege to apply, the government must satisfy a two-prong test.  <u>Virginia Beach</u>, 995 F.2d at 1253.  The government must establish that the withheld material was both predecisional and deliberative.  <u>Id.</u>

"Predecisional documents are 'prepared in order to assist an agency decisionmaker in arriving at his decision.'" <u>Id.</u> (citing <u>Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.</u>, 421 U.S. 168, 184, 95 S.Ct. 1491, 1500, 44 L.Ed.2d 57 (1975)). To satisfy the "predecisional" criterion, the government need not

> identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process . . . [T]he line between predecisional documents and postdecisional documents may not always be a bright one.

<u>Virginia Beach</u>, 995 F.2d at 1253 (citing <u>NLRB v. Sears, Roebuck &</u>

28

Co., 421 U.S. 132, 151-52, nn. 18-19, 95 S.Ct. 1504, 1516-17, nn.
18-19, 44 L.Ed.2d 29 (1975); accord Access Reports, 926 F.2d at
1196 (rejecting requirement that government " 'pinpoint' a single
decision to which the [withheld] memorandum contributed")).

The deliberative prong requires that the information be
"a direct part of the deliberative process in that it makes
recommendations or expresses opinions on legal or policy
matters." Vaughn, 523 F.2d at 1143-44 (D.C. Cir. 1975).
"Deliberative material reflects the give-and-take of the
consultative process by revealing the manner in which the agency
evaluates possible alternative policies or outcomes." Virginia
Beach, 995 F.2d at 1253.

> To fall within the deliberative process privilege,
> materials must bear on the formulation or exercise of
> agency policy-oriented judgment. The deliberative
> process privilege, we underscore, is essentially
> concerned with protecting the process by which policy
> is formulated. . . . [W]hen material could not
> reasonably be said to reveal an agency's or official's
> mode of formulating or exercising policy-implicating
> judgment, the deliberative process privilege is
> inapplicable.

Ethyl Corp., 25 F.3d at 1248-49.

a.   E-mails

The Vaughn indices and corresponding attached

29

declarations[9] identify three fully withheld and one partially
redacted e-mail exchanges withheld by the EOUSA and six e-mail
messages fully redacted by the OIP.  These four EOUSA exchanges
and six OIP messages as described in the Vaughn indices and
declarations apparently relate to agency employees' discussions
about possible courses of action in response to the inquiry from
the Senate committee and in response to The Clarion Ledger
newspaper story.  (06-26-06 Vaughn Index; 09-01-06 Vaughn Index,
attached as Ex. 2-B to Mot. for S.J.; Pustay Decl. ¶¶ 11-12.  For
example, the following description in the EOUSA's Vaughn index
for withholding document 3 was typical of the defendant's bases
for withholding all of the e-mails:

> This e-mail contains internal Department of Justice
> communications between EOUSA and other DOJ components
> regarding the Katrina-related survey, and it contains
> intra-agency deliberations regarding possible courses
> of action in response to a forwarded press inquiry
> concerning the Katrina-related survey at issue.

(06-26-06 Vaughn index for doc. 3).

        The four EOUSA exchanges and six OIP messages were
prepared by agency personnel in an effort to recommend the policy

---

[9]  There was a listing in the EOUSA's Vaughn index for the
entirety of document 2.  (06-26-06 Vaughn index).  When it was
later determined that document 2 should be disclosed but for a
redacted phone number and a redacted sentence, the Boseker
declaration explained the reason for redacting.  (Boseker Decl. ¶
28 at Doc. 2, attached as Ex. 1 to Mot. for S.J.).  The court
thus considers the Boseker declaration in conjunction with the
EOUSA's Vaughn index in evaluating whether the sentence in
document 2 was permissibly withheld.

judgments that should be formulated in determining the
appropriate responses to the Senate committee and newspaper
story.  (Id.; Boseker Decl. ¶ 28, attached as Ex. 1 to Mot. for
S.J.).  In that sense, they satisfy the "predecisional" prong of
the deliberative process privilege.  See Virginia Beach, 995 F.2d
at 1253; Ethyl Corp., 25 F.3d at 1248.  The four EOUSA exchanges
and six OIP messages presumably reflected the personal opinions
of the writer, rather than the official policy of the agency, and
that is precisely what the deliberative process privilege was
meant to protect from disclosure.  See id.

        With respect to the deliberative prong of the
privilege, it appears the four EOUSA exchanges and six OIP
messages were part of the give-and-take of the consultative
process leading to the policy-oriented judgment of the agency of
how to respond to the Senate inquiry and article.  (06-26-06
Vaughn Index; 09-01-06 Vaughn Index; Boseker Decl.; Pustay
Decl.).  Consequently, the deliberative prong has been satisfied
by the government.  See Virginia Beach, 995 F.2d at 1253.

        Even for the four EOUSA exchanges and six OIP messages,
plaintiff contends the Vaughn indices provide inadequate
descriptions for the bases for exclusion.  (Resp. at 14).  Our
court of appeals has explained in the context of the
applicability of another FOIA exception that agency affidavits
should be presumed reliable.

31

> As we stated in Spannaus[v. U.S. Dep't of Justice, 813
> F.2d 1285, 1289 (1987)], "[i]f the government fairly
> describes the content of the material withheld and
> adequately states its ground for nondisclosure, and if
> those grounds are reasonable and consistent with the
> applicable law, a district court should uphold the
> government's position. The court is entitled to accept
> the credibility of the affidavits, so long as it has no
> reason to question the good faith of the agency."

Bowers v. U.S. Dep't of Justice, 930 F.2d 350, 357 (4th Cir.
1991).  The court assumes the validity of the government's
declarations and that they were prepared in good faith.

        Nevertheless, an agency's affidavits must be relatively
detailed and nonconclusional in order to support a FOIA
exemption.  See Simmons v. U.S. Dep't of Justice, 796 F.2d 708
(4th Cir. 1986); see also National Parks & Conservation Ass'n v.
Kleppe, 547 F.2d 673, 680 (D.C. Cir. 1976).  The government
satisfies its burden "by describing the withheld material with
reasonable specificity and explaining how it falls under one of
the enumerated exceptions."  Hanson, 372 F.3d at 290.  The Vaughn
indices explain the four EOUSA exchanges and six OIP messages
were part of the chain of communication in which employees of the
agency brainstormed ways to respond to the Senate committee and
the newspaper story.  (06-26-06 Vaughn index; 09-01-06 Vaughn
index).  This give-and-take of the deliberative process serves as
an adequate basis upon which to deny disclosure.

Alternatively, plaintiff asserts that, at a minimum, the court should conduct an in camera review of the four EOUSA exchanges and six OIP messages listed in the Vaughn indices. (Resp. at 5).  The Court established early on in FOIA jurisprudence that an in camera review is not automatic.

> As was said in *Kaiser Aluminum & Chemical Corp.*, 141 Ct. Cl., at 50, 157 F. Supp., at 947: "It seems . . . obvious that the very purpose of the privilege, the encouragement of open expression of opinion as to governmental policy is somewhat impaired by a requirement to submit the evidence even [*in camera*]." Plainly, in some situations, *in camera* inspection will be necessary and appropriate.  But it need not be automatic.  An agency should be given the opportunity, by means of detailed affidavits or oral testimony, to establish to the satisfaction of the District Court that the documents sought fall clearly beyond the range of material that would be available to a private party in litigation with the agency.  The burden is, of course, on the agency resisting disclosure, 5 U.S.C. § 552(a)(3), and if it fails to meet its burden without *in camera* inspection, the District Court may order such inspection.

Mink, 410 U.S. at 93; see also Ethyl Corp., 25 F.3d at 1249.  In response to this statement in Mink, the idea of the Vaughn index was created.  "If the [Vaughn] index is so vague as to leave the district court with an inability to rule, then some other means of review must be undertaken, such as in camera review."  Ethyl Corp., 25 F.3d at 1250.  Yet, "an in camera review should not be resorted to as a matter of course, simply on the theory that 'it can't hurt.'"  Quinon v. FBI, 86 F.3d 1222, 1228 (D.C. Cir. 1996) (citing Ray v. Turner, 587 F.2d 1187, 1195 (D.C. Cir. 1978)).

33

Because the four EOUSA exchanges and six OIP messages reflect a deliberative approach prior to policy decisions, both prongs necessary to invoke the deliberative process privilege are satisfied and the privilege is applicable to all of them. See Virginia Beach, 995 F.2d at 1253. The Vaughn indices and accompanying declarations sufficiently described the basis for exclusion of the four EOUSA exchanges and six OIP messages and the agency's evaluative process. Pursuant to the requirement of § 552, the four EOUSA exchanges were reviewed by John E. Boseker, an attorney for the EOUSA, and the six OIP messages were reviewed by Melanie Ann Pustay, acting director of OIP, to determine whether portions could be segregated and disclosed, and some of the segregable material was released. (Boseker Decl. ¶¶ 28-29, attached as Ex. 1 to Mot. for S.J.; Putsay Decl. ¶ 13, attached as Ex. 2 to Mot. for S.J.). The four EOUSA exchanges and six OIP messages were properly withheld and in camera review of them is unnecessary.

b.   Draft Letters to Congressman Conyers

"Stated differently, the [deliberative process] privilege protects 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" Ethyl Corp., 25 F.3d at 1248 (citing Coastal States

34

Gas Corp. v. U.S. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980)) (emphasis added); Virginia Beach, 995 F.3d at 1253.

In rejecting the disclosure of withheld draft documents, a district court explained that, "[d]raft documents, by their very nature, are typically predecisional and deliberative." Kidd v. U.S. Dep't of Justice 362 F. Supp.2d 291, 295 (D. D.C. 2005) (citing Exxon Corp. v. U.S. Dep't of Energy, 585 F. Supp. 690, 698 (D. D.C. 1983)). Our court of appeals has stated that drafts presented by a subordinate to a superior for revision are likely to receive deliberative process protection. Virginia Beach, 995 F.3d at 1253 (citing Providence Journal Co. v. U.S. Dep't of the Army, 981 F.2d 552, 559 (1st Cir. 1992)). Other courts have consistently found that documents in draft form fall within the confines of the deliberative process privilege. See e.g. Krikorian v. U.S. Dep't of State, 984 F.2d 461 (D.C. Cir. 1993) (draft letters proposing options for replies to public inquiries about an article on Armenian terrorism that was published in "The Department of State Bulletin" was predecisional and protected by exemption 5 since the letters reflected advisory opinions important to the deliberative process); Town of Norfolk v. U.S. Army Corps of Engineers, 968 F.2d 1438, 1458 (1ˢᵗ Cir. 1992) (unsigned draft letter with no factual information and reflecting only a preliminary agency position that was subsequently rejected was

35

properly withheld pursuant to the deliberative process privilege
in FOIA); Sierra Club v. U.S. Dep't of Interior, 384 F. Supp.2d
1, 18-19 (D. D.C. 2004) (six Department of Interior draft letters
to Senators and Representatives, containing suggested responses
to inquiries regarding proposed petroleum exploration in the
Arctic National Wildlife Refuge were properly exempted under
exclusion 5, even if decision to undertake such exploration had
already been made; draft letters constituted recommendations from
staff as to how agency officials might handle congressional
inquiries); Van Aire Skyport Corp. v. FAA, 733 F. Supp. 316, 322
(D. Colo. 1990) (draft of a Federal Aviation Administration
letter to Denver and State of Colorado officials on the issues of
the Denver airport was exempt under exemption 5); Steyermark v.
von Raab, 682 F. Supp. 788, 790-791 (D. Del. 1988) (draft of
letter from the United States Customs Service to a Delaware
legislator regarding an investigation was excluded pursuant to
exemption 5); U.S. v. J.B. Williams Co., Inc., 402 F. Supp. 796,
800 (S.D. N.Y. 1975) (proposed drafts of a letter to the Attorney
General of the United States certifying a penalty action brought
by the Federal Trade Commission were immune from disclosure by
virtue of exemption 5 because the drafts had not been "adopted"
by the Federal Trade Commission as the basis of a decision).

"Nevertheless, an agency cannot avoid disclosing
nondeliberative or predecisional material merely by placing it in

36

draft form."  Van Aire Skyport Corp., 733 F. Supp. at 321 (citing
Dudman Communications Corp. v. U.S. Dep't of the Air Force, 815
F.2d 1565, 1569 (D.C. Cir. 1987)); see also
Arthur Andersen & Co. v. IRS, 679 F.2d 254, 257 (D.C. Cir. 1982);
Sierra Club v. U.S. Dept. of Interior, 384 F. Supp.2d 1, 18 (D.
D.C. 2004) ("The earlier version of the identical document would
not be privileged merely because it was labeled "draft."); Burke
Energy Corp. v. U.S. Dep't of Energy, 583 F. Supp. 507, 513 (D.
Kan. 1984).  A true draft that represented the tentative position
of agency personnel and was subject to later revision would,
however, be predecisional and exempt from disclosure.  Virginia
Beach, 995 F.3d at 1253; Sierra Club, 384 F. Supp.2d at 18; Van
Aire Skyport Corp., 733 F. Supp. at 321.

        Without citing any authority for its position,
plaintiff argues that a draft document essentially becomes a
final document if a subsequent document is not adopted by the
agency.  Courts have previously rejected this argument.  See e.g.
Sears, Roebuck & Co., 421 U.S. at 151, n. 8.  "The determination
not to issue a policy evaluation might itself be a final
decision.  Furthermore, although many processes might not ripen
into agency decisions, that does not preclude application of the
deliberative process privilege."  Judicial Watch, Inc. v.
Clinton, 880 F. Supp. 1, 13 (D. D.C. 1995), aff'd on other
grounds, 76 F.3d 1232 (D.C. Cir. 1996).

Although the burden is on the DOJ and all inferences must be construed in the light most favorable to Keeper of the Mountains, the DOJ has established in the <u>Vaughn</u> index and accompanying declaration with appropriate particularity that the withheld draft letters to Congressman Conyers are true drafts representing the tentative position of agency personnel subject to revision, or in this case, nondisclosure.

Alternatively, plaintiff argues that factual information should have been segregated from the draft letters and disclosed.  (Resp. at 5).

The FOIA exceptions apply to categories of information rather than entire documents.  <u>Ethyl Corp.</u>, 25 F.3d at 1245; <u>Virginia Beach</u>, 995 F.2d at 1253.  The act specifically provides that "segregable portions of a record shall be provided  . . . after deletion of the portions which are exempt . . . ."  5 U.S.C. § 552(b).  Though the court did not need to address it in detail in the preceding sections, FOIA exemptions generally do not protect "purely factual material appearing in . . . documents in a form that is severable without compromising the private remainder of the documents."  <u>Playboy Enterprises, Inc. v. U.S. Dep't of Justice</u>, 677 F.2d 931, 935 (D.C. Cir. 1982) (citing <u>Mink</u>, 410 U.S. at 91)); <u>see</u> <u>also</u> <u>Hopkins v. U.S. Dept. of Housing and Urban Development</u>, 929 F.2d 81, 85 (2d Cir. 1991) (citing

Local 3, IBEW, 845 F.2d at 1180).  However, if the facts are
"'inextricably intertwined with the policymaking processes' such
that revelation of the factual material would simultaneously
expose protected deliberation," then those facts are protected by
the privilege.  Virginia Beach, 995 F.2d at 1253 (citing Mink,
410 U.S. at 92); see also Petroleum Information Corp. v. Dep't of
Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992); Ryan v. Dep't of
Justice, 617 F.2d 781, 790 (D.C. Cir. 1980).

        The sworn statement of John E. Boseker ("Boseker
declaration"), who is the attorney advisor for the production of
records and notification of documents withheld by the EOUSA,
contains a blanket assertion in paragraph 29 that all documents
withheld by the EOUSA have been evaluated to determine if any
portion could be segregated and disclosed without compromising
the integrity of the entire document.  (Boseker Decl. ¶ 29,
attached as Ex. 1 to Mot. for S.J.).  On the other hand, with
respect to the OIP documents, the sworn statement of Melanie Ann
Pustay ("Pustay declaration"), who is the acting director of OIP,
contains no such blanket reassurance that they have been reviewed
for segregable material.  (Pustay Decl., attached as Ex. 2 to
Mot. for S.J.).  Moreover, the Pustay declaration acknowledges
that OIP reviewed the six e-mail messages listed in the OIP's
Vaughn index for segregable material.  (Id. ¶ 13).  It did not do
so for the draft letters.  The Pustay declaration makes the

39

following conclusional statement with respect to the drafts to
Congressman Conyers:

> The process by which a draft evolves into a final
> document is itself a deliberative process.  As a
> result, there is no reasonably segregable, non-exempt
> information that can be disclosed from the drafts.

(Id. ¶ 10).  Citing paragraph 10 of the Pustay declaration,
defendant contends in its reply brief that "no reasonably
segregable information in these draft letters exists . . ."
(Reply at 8).  The unsworn assertion by counsel cannot overcome
the DOJ's failure to conduct an inquiry into whether segregable
information may be disclosed, particularly when counsel's
assertion seems to be relying on the conclusional statement by
Pustay that is troublesome.  Similarly, the OIP's Vaughn index
itself indicates no attempt by the agency to review whether the
drafts contained material outside the exemption that could be
segregated and disclosed.  (09-01-06 Vaughn index, attached as
Ex. 2-B to Mot. for S.J.).

        This position by the agency is contrary to the portion
of § 552(b) following all of the nine enumerated exceptions,
which states "[a]ny reasonably segregable portion of a record
shall be provided to any person requesting such record after
deletion of the portions which are exempt under this subsection."
5 U.S.C. § 552(b).  An agency must review all withheld material
with the quoted direction in mind.  See id.

It appears that the segregable material would probably be a small portion of the letters, if any exists at all. Nevertheless, there must be some assurance that the letters were reviewed and a determination was made that none of the material in the letters is segregable.  No such assurance exists here.

Plaintiff has requested that the court conduct an in camera review of the draft documents.  (Resp. at 4).  As stated previously, in camera review is not automatic but may be necessary when the agency fails to meet its burden.  See Mink, 410 U.S. at 93; Ethyl Corp., 25 F.3d at 1249-50; Quinon, 86 F.3d at 1228.

The court affords the OIP an additional opportunity to review both draft letters to determine whether any of the information is segregable and, if so, disclosable.  See Coastal States Gas Corp. v. Dep't of Energy, 644 F.2d 969, 979-980 (3d Cir. 1981) (citing Dellums v. Powell, 642 F.2d 1351, 1359 (D.C. Cir. 1980)); Campaign For Responsible Transplantation v. U.S. Food & Drug Admin., 219 F. Supp.2d 106, 116-117 (D. D.C. 2002).

IV.

Based on the foregoing, it is ORDERED that the issues raised in defendant's motion for summary judgment are resolved as

41

follows:

1. The motion as to withholding the two-page tally of
   U.S. Attorneys' Offices be, and it hereby is,
   denied;

2. The motion as to the four EOUSA e-mail exchanges
   and six OIP e-mail messages described in the
   <u>Vaughn</u> indices be, and it hereby is, granted;

3. To the extent PAO 4 and OLA 17, 22, 23, 24, 25,
   and 26 and PAO 5, 9, 11, 12 and OLA 9, 14, 15, and
   21 exist, remain undisclosed, and are not
   described in a <u>Vaughn</u> index, the motion as to
   these e-mails be, and it hereby is, denied;

4. The motion as to the two withheld draft letters by
   an Assistant Attorney General addressed to
   Congressman Conyers, designated as OLA 7 and 8,
   be, and it hereby is, denied inasmuch as there is
   no assurance that the letters have been reviewed
   to determine whether factual information could be
   segregated from the opinion material;

5. The parties be, and they hereby are, directed to
   confer with plaintiff with respect to PAO 4 and
   OLA 17, 22, 23, 24, 25, and 26 (which thus far

have been undisclosed) and PAO 5, 9, 11, 12 and
OLA 9, 14, 15, and 21 (which thus far have been
redacted virtually entirely).  To the extent there
remains disagreement as to the disclosure of these
documents, the defendant, specifically OIP, be,
and it hereby is, directed to file by October 1,
2007, a supplemental <u>Vaughn</u> index addressing them;
and

6.    The defendant, specifically OIP, be, and it hereby
is, directed to review the draft letters from the
Assistant Attorney General to Congressman Conyers,
identified as OLA 7 and 8, to determine whether
any portions of the letters are disclosable and
shall file its determination by October 1, 2007.

      The Clerk is directed to forward copies of this
memorandum opinion and order to all counsel of record.

                        DATED: August 28, 2007

                        _____
                        John T. Copenhaver, Jr.
                        United States District Judge

43